UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION
CIVIL ACTION NO.: 1:16-CV-03572 - RDB

| | |
|---|---|
| STATE AUTO PROPERTY AND | ) |
| CASUALTY INSURANCE COMPANY, | ) |
| as subrogee of Milton and Carol McAllister | ) |
| Investment Property LLC, d/b/a Bigfoots | ) |
| Steak and Hoagie Restaurant, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| CAP ELECTRICAL, INC. and | ) |
| DELMARVA POWER & LIGHT | ) |
| COMPANY, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS CROSS-MOTION TO ALLOW
DISCOVERY AND DEFER DEFENDANT'S MOTION TO DISMISS OR
ALTERNATIVELY, PLAINTIFF'S INITIAL RESPONSE TO
DEFENDANT'S MOTION TO DISMISS**

**I.     PLAINTIFF'S BRIEF IN SUPPORT OF ITS CROSS-MOTION TO ALLOW
DISCOVERY AND DEFER RULING ON DEFENDANT'S MOTION TO DISMISS**

Plaintiff, STATE AUTO PROPERTY AND CASUALTY INSURANCE COMPANY,

a/s/o Milton and Carol McAllister Investment Property LLC d/b/a Bigfoots Steak and Hoagie

Restaurant, by and through counsel, submits its Cross-Motion to allow discovery and defer

defendant's Motion to Dismiss.

On January 13, 2017 defendant Delmarva Power & Light Company ("DPL") filed a Motion

to Dismiss Plaintiff's Amended Complaint based upon the alleged application of portions of one

of its tariffs entitled Continuity of Service and the alleged lack of factual detail in the Amended

Complaint.  In the memorandum in support of its motion, DPL, on repeated occasions, alleged a

lack of facts or asserted "facts" not of record.  Examples of these instances are as follows:

> It is clear that after the fire was suppressed, Plaintiff would then demand that DPL restore its service.  Plaintiff is thus suing DPL for an alleged inadequate "change in" its service, or alternatively, for a delay in changing its service.  Similarly, Plaintiff alleges that its damages arise from DPL's failure to interrupt its service in a timely manner.

DPL's Memorandum of Law in Support of Its Motion to Dismiss at p. 10.

> Both the fire itself and the resulting request from the local fire department were beyond the control of DPL and the request for assistance came from the local government, thus triggering the above immunity, to say nothing of DPL's ability to respond within Plaintiff's totally arbitrary timeliness standard of under an hour.

DPL's Memorandum of Law in Support of Its Motion to Dismiss at p.11.

> Plaintiff has absolutely no knowledge of the availability, whereabouts, proximity, qualifications, service calls, or priorities of other DPL personnel or trucks which may or may not have been available or in closer proximity to the fire such that the DPL dispatcher should have re-routed such personnel.

DPL's Memorandum of Law in Support of Its Motion to Dismiss at p. 15-16.

> In any event, this allegation is unsupported by any facts and again contains only a formulaic conclusory statement that DPL ignored the fire department's call, without any allegations regarding the other fires, outages, failures, or other emergency or important service calls that were on DPL's plate at the time of this fire.

DPL's Memorandum of Law in Support of Its Motion to Dismiss at p. 16.

> It defies logic then, that the Plaintiff alleges that DPL violated some mystery duty to "promptly" respond to the scene of a structure fire, and moreover, that it was obligated to arrive on the scene and disconnect electric service *before* the fire department could conduct its fire suppression duties.

DPL's Memorandum of Law in Support of Its Motion to Dismiss at p. 30.

> DPL's utility operations are always in motion and it do not stand idle when there is no fire awaiting a dispatcher's call.  Indeed, DPL is constantly responding to a never-ending series of utility work orders, trouble-calls, capital projects, customer complaints, electrical failures, maintenance work, and related utility functions. Should a fire occur and DPL be called to respond, it would then seek out available vehicles and personnel to respond.  Such prioritizing may include removing personnel from other projects and reassigning them to respond to the fire.

DPL's Memorandum of Law in Support of Its Motion to Dismiss at p. 30-31.[1]

DPL's motion came before it answered and its motion asserts unsubstantiated facts outside the record. Plaintiff requests an opportunity to take reasonable and limited factual discovery to further respond to the motion. *See Kremen v. Blank*, 55 B.R. 1018, 1022 (D. Md. 1985) (discovery, rather than dismissal, is the appropriate method for fleshing out of plaintiff's claim when the facts are within the defendant's knowledge).

In a similar matter involving the alleged application of a tariff that a defendant utility argued barred a subrogation claim, this Court permitted the plaintiff insurance company to take fact discovery and ultimately decided on a motion for summary judgment that the tariff did not bar the subrogating insurance company's claim. *See Harford Mutual Insurance Company v. Potomac Electric Power Co.,* 2003 U.S. Dist. Lexis 28979; 2003 WL 23304961 (D. Md. 2003) (unreported and attached as Exhibit "1").

Likewise, here, Plaintiff requests the opportunity to take fact discovery to establish facts contrary to the unsubstantiated facts DPL asserts in support of its motion and to establish facts that are unavailable to plaintiff without the ability to utilize the judicial process to obtain these facts.

Plaintiff submits the attached Affidavit of Albert S. Nalibotsky (Nalibotsky Affidavit attached as Exhibit "2") in support of its request to take limited fact discovery. Based on the attached Affidavit, Plaintiff believes it necessary to inquire into several issues, including the existence of the classification system and priority list of electrical emergencies developed by DPL to provide timely and prompt assistance to five departments including those involved in this fire suppression effort. *See* Nalibotsky Affidavit at ¶¶4-6.

---

[1]     DPL's reliance on "facts" outside the record essentially converts its motion to dismiss to a motion for summary judgment; this entitles the plaintiff to engage in discovery to elicit facts contrary to DPL's unsupported recitation of "facts."

WHEREFORE, Plaintiff respectfully requests that Defendant's Motion to Dismiss be continued or held in abeyance and that Plaintiff be allowed to pursue discovery pursuant to the deadlines to be established by the Court in order to issue written discovery, take depositions, obtain affidavits, and to otherwise make effective use of the discovery procedures available so that they can more fully respond to the merits of the Defendant's motion to dismiss.

## II.      PLAINTIFF'S INITIAL RESPONSE TO DPL'S MOTION TO DISMISS

### A.      Preliminary Statement

This diversity action arises out of an electrical fire that caused damage to Milton and Carol McAllister Investment Properties d/b/a Bigfoots Steak and Hoagie Restaurant ("Bigfoots Restaurant") in Rising Sun, Maryland.  State Auto, which insured the McAllister Investment Properties' real and personal property commenced this action against the defendants Cap Electrical, Inc. and DPL seeking to recoup insurance proceeds that State Auto paid to cover the damage.  The Amended Complaint alleges that defendant Cap Electrical, Inc. caused the fire by negligently installing the wiring for the meter and the electrical panel/trough located on the outside of the building.  The Amended Complaint further asserts that defendant DPL negligently and intentionally failed to timely respond to a hazardous electrical incident, which delay resulted in exacerbating the plaintiff's subrogor's property damage and tied up local emergency resources.

Defendant DPL asserts 3 main arguments in support of its motion to dismiss Plaintiff's Amended Complaint.  One, DPL asserts it did not owe any duty to respond to the hazardous electrical incident and Priority One calls from the responding fire department.  Two, DPL argues that its tariff agreement insulates it from plaintiff's claims and, three, DPL claims that plaintiff did not adequately plead that DPL's acts or omissions amounted to gross negligence.
*See* Defendant's Memorandum in Support of its Motion to Dismiss at pp. 1-5 [DE # 25-1].

In response, plaintiff asserts that 1) pursuant to the Maryland Public Utility Commission regulations, DPL, as a public utility, owes a duty to act reasonably at all times, 2) the defendant's tortious conduct falls outside the scope of its tariff immunity as it is unrelated to the supply of electric power to its customers, and 3) Plaintiff has pled with adequate specificity that DPL's intentional and willful acts amount to gross negligence.

B.      Procedural History

On October 28, 2016, Plaintiff filed its Complaint against the defendants alleging that they were responsible for damages caused by the June 7, 2015 fire at the Bigfoots Restaurant in Rising Sun, Maryland.  On December 12, 2016, Defendant Delmarva Power & Light Company filed a motion to dismiss the complaint for failure to state a claim. On December 21, 2016, Plaintiff filed its Amended Complaint [DE # 19].  The pending motion to dismiss was filed in response to the Amended Complaint [DE # 25][2].

C.      Statement of Facts

This action arises from the June 7, 2015 fire at the Bigfoots Restaurant at 20 Main Street in Rising Sun, Maryland.  Plaintiff State Auto provided fire insurance to Milton and Carol McAllister Investment Properties, Inc. ("McAlister"), the owner/operator of the Bigfoots Restaurant [DE #19, Am. Compl. at ¶¶1-3].  Defendant Cap Electrical, Inc. is engaged in the electrical contracting business [DE #19, Am. Compl. at ¶4].  Defendant DPL is engaged in the electric utility business [DE #19, Am. Compl. at ¶5].  The Court has jurisdiction pursuant to 28 U.S.C. § 1332 based upon diversity of citizenship [DE #19, Am. Compl. at ¶6].

---

[2]      Defendant's Motion argues that the Amended Complaint should be dismissed for failure to state a claim under "Rule 12"; Plaintiff considers the motion premised upon Rule 12 (b)(6).

On or about June 7, 2015, a fire started in an electrical panel/trough on the exterior of the Bigfoots Restaurant Building [DE #19, Am. Compl. ¶13].   The Town of Rising Sun Fire Department ("RSFD") promptly responded to the fire.  The electrical panel fire created a hazardous situation.  [DE #19, Am. Compl. ¶15].

DPL, in conjunction with regional fire and rescue departments served by DPL including the RSFD, had previously developed a classification system and priority list for electrical emergencies to allow DPL to provide timely and prompt assistance to the RSFD and other fire departments in the event of an emergency.  In accordance with DPL's training and instructions, the RSFD notified DPL of a Priority One emergency involving an electrical panel fire at 12:07 p.m.  [DE #19, Am. Compl. ¶¶9 and 15].  This Priority One designation is the highest level within DPL's emergency classification and priority list system.[3]  [DE #19, Am. Compl. ¶12].  Delmarva responded that it would "get someone right out" to the fire scene. [DE #19, Am. Compl. ¶16].  On prior occasions, DPL has responded to the RSFD's Priority One request for assistance in less than 15 minutes.  [DE #19, Am. Compl. ¶20].

After repeated assurances from DPL to RSFD that its crew was close to arriving at the fire scene, DPL's technician did not arrive until an hour after the initial call to disconnect the electric service to the restaurant.  [DE #19, Am. Compl. ¶19].  Delmarva knew that the RSFD relied on it to treat a Priority One Emergency Call as its highest priority.  [DE #19, Am. Compl. ¶12].  This delay in disconnecting the electrical service impeded the fire suppression efforts for at least an hour after RSFD's initial call for DPL's assistance.  [DE #19, Am. Compl. ¶17].  Until DPL's

---

[3]       *See* Delmarva's parent company Pepco Holdings' Emergency Operation Plan (EOP) filed with the PSC.  This plan describes the Priority One Classification as: (1) Any vehicle accident in which a rescue cannot be safely initiated because of downed power line; (2) Any electrical problem that has a potential to be life threatening and; (3) Any structure fire that has an electrical problem that prohibits a rescue or fire suppression and cannot be controlled by shutting off the structure's main electrical switch to interrupt electric service.  (emphasis added) at p. 22.  A copy of the applicable excerpts of Pepco's EOP is attached as Exhibit "3".

arrival, the RSFD was forced to move to a defensive posture in its efforts to suppress the fire. [Nalibotsky Affidavit ¶9].

Delmarva knew that it could not timely respond to the Priority One emergency but intentionally misled the Fire Department on the expected arrival time. [DE #19, Am. Compl. ¶21]. Knowing that its initially assigned technician was preoccupied on another service call, Delmarva intentionally elected not to assign technicians who were available to respond to the Priority One notification at the Bigfoots Restaurant. [DE #19, Am. Compl. ¶22].

Due to DPL's delayed response, the fire spread from the electrical panel/trough into the building and damaged/destroyed McAllister's real and personal property and business interests [DE #19, Am. Compl. ¶¶23].

DPL had a duty to exercise reasonable care in reducing the hazards to which its customers and the general public may be subjected [DE #19, Am. Compl. ¶35]. DPL breached its duties by not only negligently responding to the hazardous electrical fire incident at the Bigfoots Restaurant but also by negligently responding to the calls for assistance from the RSFD [DE #19, Am. Compl. ¶16].

As a result of the fire and resultant damages, McAllister made claims to its property insurer, Plaintiff State Auto, who subsequently paid its insured in excess of $500,000.00 [DE #19, Am. Compl. ¶¶14-25]. The Plaintiff is subrogated to the rights of its insured to extent of its payments [DE #19, Am. Compl. ¶25].

D.      Argument

1.      Legal Standard of Review

a.      Rule 12(b)(6) Standard for Motion to Dismiss

A court must deny a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim where the complaint alleges enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible when "the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  "Rule 12(b)(6) 'does not countenance . . . dismissal based on a judge's disbelief of a complaint's factual allegations.'" *Colon Health Ctrs. Of Am. LLC v. Hazel*, 733 F.3d 525, 545 (5th Cir. 2013) (Quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)).  Rather in assessing whether this standard has been met, the Court must examine the complaint as a whole, consider the factual allegations in the Complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. Of Comm'rs of Davidson Cnty.,* 407 F.3d 266, 268 (4th Cir. 2005) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  A Rule 12(b)(6) Motion is distinguished from a Motion for Summary Judgment under Rule 56, which goes to the merits of the claim.  "A Rule 12(b)(6) motion should be granted only in very limited circumstances." *Rogers v. Jefferson-Pilot Life Ins. Co.,* 833 F.2d 324, 325 (4th Cir. 1989).

b.      The Pleading Standard

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "' give the defendant fair notice of what the … claim is and the grounds upon which it rests.'"  Whether a complaint adequately states a claim for relief is judged by reference to the

pleading requirements of Fed. R. Civ. P. 8. *See Twombly*, 550 U.S. at 554-555. Rule 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although a plaintiff need not include "detailed factual allegations," the rule demands more than bald accusations or mere speculation. *Twombly,* 550 U.S. at 555. To satisfy the minimal requirements of Rule 8(a)(2), the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Id*. at 556 (brackets in original) (internal quotation marks omitted).

2.       <u>DPL Breached Its Duty To Use Reasonable Care In Responding To The Hazardous Electrical Incident And Calls For Assistance From The Fire Department</u>

The essential elements of negligence are duty, a breach of that duty, causation, and damages. *See Jacques v. First Nat'l Bank of Md.,* 307 Md. 527, 515 A.2d 756, 758 (Md. 1986). To survive a Rule 12(b)(6) motion, "a complaint asserting a negligence claim must disclose 'that each of the elements is present in order to be sufficient.'" *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002) (citation omitted). Here, DPLs Motion argues that as a threshold matter, DPL did not owe a duty of care to Plaintiff under the circumstances.

DPL is an operating public service company as defined by Md. Code Ann., Pub. Util. Cos. ("PUC") §§ 1-101 (h), (w). As a public service company, DPL is required and owes a duty to "exercise reasonable care to reduce the hazards to which its employees, its customers, and the general public may be subjected." Md. Regs. Code ("COMAR") title 20, § 50.08.01A (2003).

Moreover, although an electric company is not an "insurer", it owes a duty to exercise reasonable care where "it reasonably may be anticipated that others, whether for business or pleasure, lawfully may come into close proximity to such [electric] lines and thereby may be subjected to a reasonable likelihood of injury. *Baltimore Gas and Electric Co. v. Flippo* 348 Md.

680, 698, 705 A.2d 1144 (1998) [downed power line case] (quoting *Bridges v. Arkansas-Missouri Power Co.,* 410 S.W.2d 106, 115-16 (Mo. Ct. App. 1966).

The fire in this matter in an electrical panel created a hazardous condition to both life and property and triggered the RSFD's Priority One emergency call for assistance. DPL's delay in responding to the electrical fire did not comply with its requirement to exercise reasonable care to reduce hazardous incidents. Its delayed response also breached its duty to use reasonable care as it knew and could anticipate that others may be subject to injury by coming near the dangerous condition posed by the fire in the electrical panel/trough.

Finally, DPL's delay in responding to the Priority One call for assistance impeded the RSFD's fire suppression efforts. DPL repeatedly assured the fire department that its crew would be promptly arriving at the fire scene to disconnect the power to the building. DPL knew that until it responded, the RSFD could only secure the area to prevent harm to persons while it waited for DPL's arrival since DPL was instrumental in developing the Priority One and classification system for emergency calls when utility equipment was involved in a fire. Because of DPL's delay, the fire spread from the electrical panel into the building destroying the restaurant building and contents therein. [4]

DPL asserts that it had no duty, whether statutory or otherwise, to use reasonable care in its response to this electrical fire. Separate from the duties referenced in § 50.08.01A (2003) of

---

[4] A plain reading of the plaintiff's Amended Complaint reveals that the plaintiff is entitled to its requested relief and the pleading meets the requirements of Rule 8 of the Federal Rules of Civil Procedure. Paragraph 35 contains a short and plain statement of DPL's duty to use reasonable care to reduce hazardous incidents. Paragraphs 10-23 include factual allegations providing the nexus between defendant's breach of its duty of care and plaintiff's damages. The Amended Complaint placed defendant on notice that its failure to timely respond to the hazardous electrical incident allowed the fire to spread and destroy the plaintiff's subrogor's property.

The plaintiff is not required under Rule 8 to provide defendant at the pleading stage with the specificity that DPL argues is necessary. The Amended Complaint alleges that defendant negligently responded to the electrical panel fire/Priority One notification and as such, failed to comply with its duty to exercise reasonable care. Once this obligation is met, the plaintiff has "nudged [her] claims "of negligence" across the line from conceivable to plausible." *Ashcroft v. Iqbal,* 566 U.S. 662, 680 (2009) (citation omitted).

the PUC Article referenced above, DPL's position is contrary to the position taken by the Maryland

Public Service Commission (the "PSC") in a similar scenario.

In 2004, the PSC brought a regulatory action against Potomac Electric Power Company

("Pepco"), DPL's sister company, regarding Pepco's delayed response to a November 2003

electrical fire at a house in Silver Spring, Maryland and calls from the responding fire department

for emergency assistance.  In its May 3, 2004 Complaint, the PSC alleged that Pepco failed to

timely respond to a downed electric distribution line, which delay resulted in substantial property

damage and tied up emergency resources.  *In the Matter of the Complaint of the Staff of the Public*

*Service Commission v. Potomac Electric Power Company Concerning an Electrical Fire in Silver*

*Spring, Maryland, Case No. 9016.* [5]

The PSC's complaint seeking the imposition of civil penalties and remedial action alleged

that Pepco's delay constituted a failure to comply with its duty to render safe and adequate electric

service[6] and exercise reasonable care to reduce hazardous incidents[7].  Pepco answered the

complaint and conceded that it owed a duty to exercise reasonable care.[8]  While Pepco took

responsibility for its mistakes and the delays in responding to the house fire, it argued that PSC

should not impose a civil penalty on it.  Prior to a hearing on the matter, the claim was settled with

Pepco agreeing to donate monies to 2 tree and environmental vegetation programs as well as it

taking remedial measures to revise its operating procedures regarding assistance calls from

emergency personnel. [9]

---

[5]     PSC Complaint attached as Exhibit "4"
[6]     PUC 5-303, Standards of Service attached as Exhibit "5".
[7]     COMAR 20.50.08.01A, Protective Measures attached as Exhibit "6".
[8]     Pepco's Answer to PSC Complaint attached as Exhibit "7".
[9]     PSC Order No. 79809 attached as Exhibit "8".

3.      The DPL Tariff Does Not Apply To This Claim

Notwithstanding DPL's breach of its duty to use reasonable care, DPL asserts that, absent

gross negligence or willful misconduct, its Tariff provides a blanket immunity barring Plaintiff's

claims.  The tariff relied upon by DPL is one pursuant to which it provides electric service to its

customers. This tariff provides the following:

SECTION X – CONTINUITY OF SERVICE BY COMPANY

A.      Company Liability

1.      The Company does not guarantee continuous uninterrupted electric service and, except as provided herein, shall not be liable for any change in, interruption, phase reversal, or resumption of service.  The Company shall not be liable to Customers, their directors, officers, employees, agents, or contractors, for any loss, cost, damage, expense, or any other liability (all of which shall be considered "Damages") regardless of whether such Damages are considered direct, indirect, incidental, special, consequential, exemplary or punitive Damages or to arise in contract or in tort, or any other cause of action, except as caused by the gross negligence or willful misconduct of the Company and only to the extent caused by the Company.

2.      The Company shall not be liable for any delay of performance, failure to perform or failure of equipment for any cause other than the gross negligence or willful misconduct of the Company, and shall not be liable for Damages from causes beyond its reasonable control including but not limited to: acts of God, storm, fire, flood, lightning, explosion or other catastrophes; any law, order, regulation, direction, action or request of the United States government or of any other government, including state and local governments having or claiming jurisdiction over the Company; acts or omissions of other entities; preemption of existing service in compliance with national emergencies; insurrections; wars; riots; unavailability of rights-of-way or materials, or strikes, lockouts, work stoppages or other labor difficulties.

The Company shall not be liable for any act or omission of any entity furnishing the Company or the Company's Customers goods, services, equipment or other products to be delivered through the Company's facilities or to be used in conjunction with goods, services, equipment or other products furnished by the Company.  The Company shall not be liable for any damages or losses due to the fault or negligence of the Customer or due to the failure or malfunction of Customer-provided equipment or facilities.

B.      Notice of Trouble

The Customer shall notify the Company promptly of any defect in service or of any trouble or irregularity in the electric supply or delivery service.

C.      Prearranged Interruption of Service

Whenever it is necessary to interrupt service for work on lines of equipment, such work shall be done, to the extent practical, at a time that will cause the least inconvenience to the Customer.  The Customer(s) to be affected shall, if practical, be notified in advance of such interruptions.

*DPL Maryland Electric Tariff, P.S.C. Md. No. 12, Electric Original Leaf No. 29 – Section X - - Continuity of Service by Company, Subsection A*.  Attached hereto as Exhibit "9".

This Court in *Harford Mut. Ins. Co., supra.,* stated that in Maryland the rule governing interpretation of a tariff is identical to interpreting statutory law.  As the Court further explained*,* a fundamental rule of statutory construction in Maryland is that "where statutory language is plain and unambiguous and expresses a definitive meaning consonant with the statute's purpose, courts must not insert or delete words to make a statute express an intention different from its clear meaning" *Harford Mut. Ins. Co.* at p. 12 (quoting *Hines v. Potomac Elec. Co.,* 305 Md. 369, 373, 504 A.2d 632 (1986)).

The tariff provides that DPL is insulated from liability arising from "any change in, interruption, phase reversal, or resumption of service" or "any delay in performance" of providing said electric service.  However, the property damage at issue here was caused by a fire, not from the interruption, reversal or reduction of electrical service.  Plaintiff contends that DPL is liable for its negligent response to the hazardous condition resulting from the electrical panel fire and by failing to timely respond to an emergency call for assistance from the RSFD.  Plaintiff does not allege that its damages were caused by an interruption of the delivery of electrical power or any other disruption regarding the supply of electric service to the restaurant building.  Based on the above rule for interpreting a tariff, the language is plain and unambiguous in expressing a definitive meaning in describing the scope of DPL's immunity from liability and those circumstances are not present here.  Thus, the tariff is not applicable.

The Maryland Public Service Commission previously explained the scope of electric utility tariff immunity provisions, stating: "Generally speaking, the provisions limit the utility's responsibility for damages caused by electrical surges, except for cases of gross negligence or willful misconduct of the Company's employees or agents". *See Public Service Commission of Maryland 2011 Report to the Maryland Legislature* attached as Exhibit *"10"*.

Moreover, this Court in *Harford Mut. Ins. Co., supra.,* previously addressed the scope of an electric company's immunity finding that a tariff agreement did not bar claims asserted by subrogated insurance companies for fire damage to its insured's property. In *Harford Mut. Ins. Co.,* two subrogated property insurers sued Pepco and Roadway Express arising from an incident where defendant Roadway's truck struck Pepco's low hanging power line. The collision caused a power line to break loose from the power pole, land of the insured's Property and caused a fire that destroyed/damaged his home and commercial property.

Pepco filed a motion for summary judgment arguing, among other things, that absent a showing of gross negligence, its tariff immunized it from liability. This Court rejected Pepco's assertion that the Plaintiffs' claims were barred by its tariff, finding that the occurrence was not a disturbance of the supply of electric power. This Court commented that "the property damage resulted from a fire, not from the interruption, reversal or reduction of service" and found from the plain reading of the tariff that it did not extend to include fires caused by falling power lines.

The case at bar is similar to *Harford Mut. Ins. Co.,* in that Plaintiff's claims are also outside the scope of the tariff language as they arise from DPL's delayed response to the hazardous electrical incident and Priority One notifications. Plaintiff's claims are not related to DPL's supply of electrical service to its customers. Indeed, the rational for rejecting the application of DPL's tariff is particularly strong here because there are no facts pled by Plaintiff in its Amended

14

Complaint indicating that its damages were caused by a disturbance in DPL's supply of electric power, or any losses caused by a power outage, interruption of service, or phase reversal.

DPL relies on several cases addressing the applicability of a tariff to immunize claims for ordinary negligence. Each of the cases arise from the disturbance of a utility's supply of electric power and as such are not relevant to the facts present in the instant matter.

For example, in *Credit Plus, Inc. v Delmarva Power & Light*, 2015 WL 6726447(unreported), DPL's negligence in installing Credit Plus's solar powered electrical system was alleged to have caused damage to Credit Plus's air-conditioning units.[10] The Court dismissed the lawsuit finding that, based upon its tariff limitations and finding that its actions did not amount to gross negligence, DPL was not liable for the phase reversal of the electrical system.

In *Maryland Jockey Club of Baltimore City, Inc., et al. v Baltimore Gas and Electric*, 202 WL 32123994 (unreported), another case primarily relied upon by DPL, the owners of the Pimlico racetrack and their subrogated insurers sued BG&E for economic damages arising from a power outage at the racetrack.[11] The trial court dismissed the lawsuit finding that the Plaintiff's allegations of negligence fell within BG&E's tariff immunity. The dismissal was affirmed on appeal as the appellate court found that the power interruption at the racetrack was the type of occurrence covered by the tariff and that BG&E's actions did not amount to gross negligence.

In these cases, the courts made clear that the utility defendants were not liable because the applicable tariffs applied to damages caused by either a phase reversal or a power outage; occurrences that were determined to be within the scope of the applicable tariffs. However, in the instant case, plaintiff does not allege that the utility's negligence arose from an alleged interrupted

---

[10]     DPL's Memorandum of Law in Support of Its Motion to Dismiss at p. 19; this Decision was attached to DPL's Memorandum at Exhibit 25-3.
[11]     DPL's Memorandum of Law in Support of Its Motion to Dismiss at p.21; this Decision was attached to DPL's Memorandum at Exhibit 25-4.

supply of electric power to the restaurant and therefore the applicable tariff immunity does not apply.

       4.       <u>Even If The DPL Tariff Applies To Plaintiff's Negligence Claim, DPL Is Not Immune For Its Gross Negligence</u>

Plaintiff's Amended Complaint sufficiently states a claim for gross negligence. Under Maryland law, gross negligence is "something *more* than simple negligence, and likely more akin to reckless conduct." *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (emphasis in original) (internal citations omitted). It is "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them." *Id*. A wrongdoer engages in gross negligence when "he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Id.*

Under this standard, courts have found gross negligence adequately pled in cases in which a plaintiff has alleged that a defendant has displayed utter indifference or thoughtless disregard to the rights of others by failing to take certain actions to address warning signs that arguably would have prevented the harm. *See Proctor v Metro. Money Store Corp.,* 645 F. Supp. 2d 464, 490 (D. Md. 2009) (finding that complaint that "outlined numerous irregularities" in the settlement and title documents that defendant had a duty to review, as well as in the manner in which money was transferred" adequately pled gross negligent); *Doe v. Bd. Of Educ. Of Prince George's Cnty.,* 888 F. Supp. 2d 659, 669-70 (D. Md. 2012) (finding that allegations that defendant school district was aware that a classmate repeatedly engaged in sexual harassment of the plaintiff, refused to act in response to the plaintiff's complaints, and assigned the classmate to the plaintiff's classroom the following school year stated a cognizable claim for gross negligence). *See also Travelers Indem. Co. v. Lasco Group, Inc.* 136 F. Supp. 2d 253, 257 (S.D.N.Y. 2001) (finding that allegations

including that defendant failed to inspect steel trusses, to notice and address design discrepancies, to assess the manufacturer's experience in fabricating steel trusses, and to verify a welder's certifications were sufficient to state a claim for gross negligence).

Like the factual allegations in the above cited cases, the Amended Complaint adequately alleges the necessary facts supporting claims asserting gross negligence.  In addition to those facts set out in § C. *supra*. (Statement of Facts), Plaintiff pled that the Defendant Delmarva willfully and wantonly disregarded the hazardous conditions that existed at the Bigfoots Restaurant and other citizens of the Town of Rising Sun; knowingly disregarded the information that a Priority One electrical emergency existed at the Bigfoots Restaurant creating a hazardous condition that resulted in substantial damage to the buildings in the area; willfully and wantonly failing to timely, promptly and properly respond to the fire as a Priority One Emergency Response; willfully and wantonly failed to safely supervise and instruct the activities of its employees necessary to respond to the Priority One Emergency Response for the restaurant; and willfully and wantonly permitted a dangerous and/or defective condition to exist when defendant knew that such conditions would create an unreasonable risk of damage and destruction.  See DE #19, Am. Compl. at ¶¶ 40-42.

The available evidence supports the inference that DPL knowingly disregarded the fire department's Priority One emergency call for assistance.  Its failure to promptly respond to the electrical emergency, after repeated assurances to the fire department, demonstrates a reckless indifference to the consequences of its actions.  These allegations provide the necessary specificity to satisfy the threshold necessary to adequately plead gross negligence as required by the cases relied upon by DPL.  At the very least, Plaintiff should be permitted to conduct discovery to explore the substance of the very facts disputed by DPL in its Motion.  *See Kremen v. Blank, supra; Rossman v.* Lazurus, 2008 U.S. Dist. LEXIS 78928 at *23 (E.D. Va. Oct. 7, 2008) (unreported and

attached as Exhibit "11") (finding that "it would be premature to grant a motion to dismiss where the parties have not yet had the opportunity to ascertain, through discovery, whether there are any facts showing willful misconduct or gross negligence by [defendant]").

     5.     DPL's Reservation to Discontinue a Customer's Service Does Not Relieve it from Acting Reasonably

DPL contends that because a portion of its tariff reserves its right to discontinue service in the event that a hazardous condition exists, it therefore has "no duty to disconnect service." DPL's Memorandum at 28-29. As stated above (in § 2 *supra.*) DPL, as a public service company, is required and owes a duty to "exercise reasonable care to reduce the hazards to which its employees, its customers, and the general public may be subjected." Md. Regs. Code ("COMAR") title 20, § 50.08.01A (2003). Irrespective that the tariff states that DPL reserves the right to disconnect service, it also has the duty to act reasonably to reduce hazards to which its customers and the public may be exposed. Given the circumstances present here, DPL's duty to act reasonably may have included the duty to disconnect service to the building involved here.

This is another area that plaintiff contends should be the subject of fact discovery to further explore those circumstances when DPL does disconnect service where a hazardous condition exists. Plaintiff anticipates that it will discover how DPL reconciles its duty to act reasonably with its claim that it has no duty to disconnect service when its customer or the public may be exposed to a hazardous condition.

## III.    CONCLUSION

For the reasons set forth above, Plaintiff State Auto Property and Casualty Insurance Company respectfully requests that this Court either grant Plaintiff's motion to take limited fact discovery or deny Defendant Delmarva Power and Light's motion to dismiss in its entirety.

This 10th day of February, 2017.

SALTZ MATKOV P.C.

/s/ Albert S. Nalibotsky

Albert S. Nalibotsky, Esquire
Maryland Bar No.:  17719
6805 Morrison Blvd., Suite 470
Charlotte, North Carolina 28211
Phone: 704-910-2680
Email: analibotsky@saltzmatkov.com

John A. Rego, Esquire
ANDERSON & QUINN, LLC
25 Wood Lane
Rockville, MD 20850
Phone:  301-762-3303
Fax:  301-762-3776
Email: jrego@andersonquinn.com
*Counsel for Plaintiff*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 10th day of February, 2016, I electronically filed

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS CROSS-MOTION TO ALLOW**

**DISCOVERY AND DEFER DEFENDANT'S MOTION TO DISMISS OR**

**ALTERNATIVELY, PLAINTIFF'S INITIAL RESPONSE TO DEFENDANT'S MOTION**

**TO DISMISS** with the Clerk of the Court using the CM/ECF system as follows:

Edward J. Brown, Esquire
The Law Office of Edward J. Brown, LLC
3300 N. Ridge Road, Suite 245
Ellicott City, Maryland 21043
brown@budbrownlaw/.com
*Counsel for Defendant Cap Electrical, Inc.*


Brian E. Hoffman, Esquire
701 Ninth Street, N.W.
Washington, DC 20068-0001
behoffman@pepcoholdings.com
*Counsel for Defendant DPL Power & Light Company*


/s/Albert S. Nalibotsky
Albert S. Nalibotsky