IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STATE AUTO PROPERTY AND
CASUALTY INSURANCE CO.,
*as subrogee of Milton and Carol McAllister
Investment Property LLC d/b/a Bigfoots
Steak and Hoagie Restaurant*

    Plaintiff,

    v.

CAP ELECTRIC, INC.,
DELMARVA POWER
AND LIGHT CO.

    Defendants.

                                        Civil Action No. RDB-16-3572

CAP ELECTRIC, INC.

    Cross-Plaintiff,

    v.

DELMARVA POWER AND
LIGHT CO.

    Cross-Defendant.

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

      Plaintiff State Auto Property and Casualty Insurance Company, as subrogee of Milton and Carol McAllister Investment Property, LLC d/b/a Bigfoots Steak and Hoagie Restaurant ("Plaintiff" or "State Auto") has brought this action against Defendants Cap Electric ("CAP") and Delmarva Power and Light Company ("DPL") alleging Negligence by both CAP and DPL (Counts I & III), Breach of Contract by CAP (Count II), and Gross

Negligence by DPL (Count IV) in connection with a fire that destroyed the Bigfoots Steak and Hoagie Restaurant in Rising Sun, Maryland (ECF No. 19.) Based on State Auto's suit, CAP has filed a Crossclaim for indemnification and contribution against DPL. (ECF No. 38.)

Currently pending before this Court are Defendant DPL's Motion to Dismiss the Amended Complaint (ECF No. 25) and Cross-Defendant DPL's Motion to Dismiss CAP's Amended Crossclaim (ECF No. 42).[1] The Court has reviewed the parties' submissions, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2016). For the reasons stated herein, DPL's Motion to Dismiss State Auto's Amended Complaint (ECF No. 25) is DENIED. DPL's Motion to Dismiss CAP's Crossclaim (ECF No. 42) is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to CAP's indemnity claim, which is dismissed, and it is DENIED as to CAP's contribution claim, which remains pending.

## BACKGROUND

At the motion to dismiss stage, this Court accepts as true the facts alleged in the Plaintiff's complaint. *See Aziz* v. *Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).

Bigfoots Steak and Hoagie is a sandwich restaurant in Rising Sun, Maryland owned by Plaintiff Milton and Carol McAllister Investment Properties. (Am. Compl. ECF No. 19 at 2.) Prior to June 7, 2015, Bigfoots retained CAP to periodically repair electric equipment and assist in electrical service to the restaurant. (*Id.* ¶ 8.) Pursuant to the service agreement, CAP upgraded the pre-existing service, installed a new electrical panel/trough, and replaced

---

[1] Also pending before this Court is State Auto's Cross-Motion to Allow Discovery and Defer Defendant's Motion to Dismiss. (ECF No. 36.) In light of the result reached herein Plaintiff's Motion is DENIED AS MOOT. Discovery will proceed in accordance with the Scheduling Order to be issued in this case.

the electrical meter for the restaurant. (*Id.*) On or about June 7, 2015, a fire originated on the exterior of the Bigfoots Restaurant building at and in the electrical panel/trough for the restaurant. (*Id.* ¶ 13.) Plaintiff alleges that the fire spread from the electrical panel/trough and damaged Bigfoots' real and personal property. (*Id.* ¶ 13.) Plaintiff also alleges the fire was caused by CAP's improper and defective installation of the electrical wiring for the restaurant's electrical meter and the electrical panel/trough. (*Id.* ¶ 14.)

The Rising Sun Fire Department responded promptly to the scene of the fire. (ECF No. 19 at ¶ 15.) As the fire's origin was electrical it, created a risk of electrocution to the firefighters. Accordingly, the Rising Sun Fire Department notified DPL of the restaurant fire at 12:07 p.m., consistent with the plans for "Priority One" emergencies.[2] (*Id.* ¶ 15.) When notified, DPL replied that it would "get someone right out there." (*Id.* ¶ 16.)

The fire department, acting in accordance with training and instructions it received from DPL, suspended fire suppression while it waited for DPL to arrive at the scene. (ECF No. 19 at ¶ 17.) In doing so, the Fire Department did not apply water on a live electrical panel, as it posed an electrocution hazard. (*Id.* ¶ 18.) Despite repeated assurances from DPL that it would respond promptly to this "Priority One" emergency, it took at least an hour for a DPL Technician to report to the scene. (*Id.* ¶ 19.) Plaintiff alleges that on prior occasions, DPL responded to Priority One emergencies in less than 15 minutes after receiving

---

[2] Prior to June 7, 2015, DPL worked with regional fire departments including the Rising Sun Fire Department to develop a classification system pursuant to which DPL would prioritize responding to electrical emergencies. (ECF No. 19 at ¶ 9.) DPL identified three tiers of electrical emergencies to the Rising Sun Fire Department: Priority One, Priority Two, and Priority Three. (*Id.* ¶ 11.) Priority One is characterized as a fire structure which has an electrical problem that cannot be controlled by shutting off the structure's main electrical switch to interrupt electrical service. (*Id.* ¶ 11.) Prior to June 7, 2015, Plaintiff alleges, DPL was aware that the Rising Sun Fire Department relied on DPL in assisting the suppression of Priority One fires. (*Id.* ¶ 12.)

3

notification of the emergency. (*Id.* ¶ 20.) Plaintiff further alleges that DPL's delay resulted in the Fire Department's inability to suppress the flames, allowing the fire to spread from the electrical panel/trough into the restaurant, causing additional damage. (*Id.* ¶ 23.) The fire resulted in damages exceeding five hundred thousand dollars ($500,000.00) to Bigfoots Restaurant. (*Id.* ¶ 24.)

On October 28, 2016, Plaintiff State Auto filed its initial Complaint.[3] (ECF No. 1.) Plaintiff filed its Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) on December 21, 2016. (ECF No. 19.) On January 13, 2017, Defendant DPL filed a Motion to Dismiss the Amended Complaint. (ECF No. 25.) CAP filed an Amended Crossclaim against DPL and included claims for Indemnification and/or Contribution on February 17, 2017. (ECF No. 38.) On February 28, 2017, Cross-Defendant DPL filed a Motion to Dismiss Defendant CAP's Amended Crossclaim Against DPL. (ECF No. 42.)

## **STANDARD OF REVIEW**

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006); *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion under Fed. R. Civ. P. 12(b)(6), a complaint must contain facts

---

[3] State Auto now files this complaint as a subrogee of Bigfoots based on Bigfoot's insurance policy with State Auto. (ECF No. 19 at ¶ 27.)

4

sufficient to "state a claim to relief that is plausible on its face." *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009). Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013).

In reviewing a Rule 12(b)(6) motion to dismiss, a court "accepts the facts as alleged" in the Plaintiff's complaint. *Quintana v. City of Alexandria, et al.*, No. 16-1630, 2017 WL 2438774, at *1 (4th Cir. June 6, 2017) (citing *LeSeur-Richmond Slate Corp. v. Fehrer*, 666 F.3d 261, 264 (4th Cir. 2012)); *Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017). "At the motion to dismiss stage, [the court must] accept as true all of the well-pleaded allegations and view the complaint in the light most favorable to [Plaintiff]." *Id.* While a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Iqbal*, 556 U.S. at 678 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim); *see A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

**I. DPL's Motion to Dismiss the Amended Complaint (ECF No. 25)**

**A. Negligence**

In support of its Motion to Dismiss plaintiff's negligence claim (Count III), DPL relies on its Tariff with the Maryland Public Service Commission. Specifically, DPL points to Section X(A)(2) of the Tariff, which provides that:

5

> The Company shall not be liable for any delay of performance, failure to perform or failure of equipment for any cause other than the gross negligence or willful misconduct of the Company, and shall not be liable for Damages from causes beyond its reasonable control including but not limited to: acts of God, storm, fire, flood, lightning, explosion or other catastrophes; any law, order, regulation, direction, action or request of the United States government or of any other government, including state and local governments having or claiming jurisdiction over the Company; acts or omissions of other entities; preemption of existing service in compliance with national emergencies; insurrections; wars; riots; unavailability of rights-of-way or materials, or strikes, lockouts, work stoppages or other labor difficulties.

(Def. DPL Ex. 1, ECF No. 25.) Based on this grant of immunity for certain simple negligence claims, DPL argues that plaintiff's negligence claim must be dismissed.

State Auto argues in opposition that the tariff language is inapplicable to the allegations raised in its Amended Complaint. (ECF No. 36 at 12-16.) In particular, State Auto points to the decision of this Court in *Harford Mut. Ins. Co. v. Potomac Elec. Power Co.*, RDB-02-2412, 2003 WL 23304961, at *6 (D. Md. Sept. 4, 2003), where this Court concluded that the tariff immunity raised by a similarly situated utility company did not preclude suit where the injuries alleged were unrelated to the delivery of electric power. DPL asserts in its Reply brief that the tariff immunity found inapplicable in *Hartford* is distinguishable from that contained in its own Tariff; then, DPL asserts, the decision in *Hartford* is inapplicable.

While DPL is correct that the language of the PEPCO tariff in *Hartford* is distinguishable from that of its own Tariff, the grant of immunity in both tariffs is not absolute, but, rather, pertains to liabilities arising out of the delivery of electric power. Indeed, the section of the DPL Tariff in which the grant of immunity appears is entitled "Section X – Continuity of Service by Company." (Def. DPL Ex. 1, ECF No. 25.) Part A(1) of that Section provides that, "[t]he Company does not guarantee **continuous**

6

**uninterrupted electric service** and, except as provided herein, **shall not be liable for any change in, interruption, phase reversal, or resumption of service**." (*Id.*) (emphasis added.)  As the Tariff language itself makes clear, the limitation of liability for negligence claims relates to the delivery of electric power.

Nor does Part A(2) of this Section of the Tariff serve to widen its grant of immunity. This part provides that, "[t]he Company shall not be liable for **any delay of performance, failure to perform or failure of equipment** for any cause other than the gross negligence or willful misconduct of the Company…," (Def. DPL Ex. 1, ECF No. 25.) Viewed in the context of the Section title and the preceding paragraph, this grant of immunity again pertains to injuries caused by DPL's failure to provide continuous service—not to all negligent acts and omissions.

The proper scope of DPL's tariff immunity is illustrated in *Credit Plus, Inc. v. Delmarva Power & Light Co.*, JKB-15-0443, 2015 WL 6736447, at *2 (D. Md. Nov. 4, 2015), a 2016 decision of this Court.  In *Credit Plus*, the plaintiff alleged that its air conditioning units were damaged by DPL's reversal of power flow to the units.  *Id.*  This Court denied the plaintiff's Motion to Amend the Complaint because the plaintiff there did not state a plausible claim for gross negligence, and the only factual allegations made were based on DPL's reversal of power flow—negligent acts within the scope of the Tariff immunity.

Similarly, in *The Maryland Jockey Club of Baltimore City, Inc. v. Baltimore Gas & Elec. Co.*, No. 2364 Sept. Term 2001, 2002 WL 32123994, at *2 (Md. Ct. Spec. App. Dec. 17, 2002) (unreported), the Maryland Court of Special Appeals affirmed the Circuit Court's dismissal of the plaintiff's negligence claim involving damages incurred as a result of a power outage

7

on Preakness Day 1998 at Pimlico Race Course. The alleged "the loss of lights and air conditioning as well as the loss of power to parimutuel equipment and to kitchen, dining, and beverage facilities" plainly resulted from the loss of electric service to the complex—and fell within the scope of BGE's similar Tariff-based immunity.[4]  *Id.*

By contrast, in *Harford*, this Court held that the PEPCO tariff's grant of immunity for power surges, fluctuations, and interruptions—that is, activities tied to the delivery of electric power—did not bar a negligence claim based on PEPCO's creation of a dangerous condition on a roadway. *See Harford Mut. Ins. Co. v. Potomac Elec. Power Co.*, No. RDB-02-2412, 2003 WL 23304961, at *5 (D. Md. Sept. 4, 2003). Thus, the plaintiff driver whose vehicle struck a low-hanging power line could bring a negligence claim against the utility. *Id.*

The holding in *Harford* is consistent with the underlying policy principle on which the Tariff immunity is based. As set forth in the Maryland Public Service Commission's 1991 Opinion:

> …such tariffs represent a proper balancing between a utility's and its customers' economic interests, and the wide-spread availability of protective devices and insurance coverage places **the cost for such power fluctuations** on those customers who need special protection for such events rather than the general body of ratepayers who would otherwise be subsidizing customers with special needs.

*Re Liab. of Elec. Power Companies for Injury or Damages Resulting from Problems in the Delivery of Elec. Power*, 82 Md. P.S.C. 92 (Apr. 5, 1991) (emphasis added). That is, while the PSC explained that utilities should not be liable for service delivery issues which customers can take

---

[4] Neither the Maryland Court of Special Appeals nor the Circuit Court below distinguished the distinct types of damages sought by the plaintiffs in *Jockey Club*. That is, both courts appear to have conflated the power delivery-based damages suffered by Pimlico's owners/operators (damages which are properly within the scope of BGE's tariff) with the property damages claimed by the racetrack (injuries which might fall outside the scope of the tariff). *Jockey Club*, 2002 WL 32123994, at *2.

precautions to avoid, this policy does not immunize the utilities from all duties to exercise reasonable care.

In light of the foregoing, it is clear that DPL's arguments overstate the scope of the immunity granted to it by the Tariff. While DPL would not be subject to claims premised on its negligent delivery of electric power to plaintiff, State Auto's allegations are instead based on DPL's failure to properly respond to a known emergency:

(a) "Defendant **failed to timely, promptly and properly respond to the fire** as a Priority One Emergency Response;"

(b) "Defendant **failed to properly, adequately and safely supervise and instruct the activities of its employees** necessary to respond to the Priority One Emergency Response for the restaurant;"

(c) "Defendant **created or permitted dangerous and/or defective conditions to exist** when defendant knew or should have known that such conditions would create an unreasonable risk of damage and destruction."

(ECF No. 19 at ¶ 36.) Accordingly, as State Auto's negligence claims fall outside the scope of DPL's Tariff immunity, DPL's Motion to Dismiss State Auto's negligence claim (Count III) must be DENIED.

**B. Gross Negligence**

With respect to Plaintiff's gross negligence claim (Count IV), DPL argues that because Plaintiff cannot prove that DPL acted with malice, the claim for gross negligence also must be dismissed. (ECF No. 25 at 14.) Plaintiff in opposition argues that gross negligence can exist even without malicious conduct and that the "reckless conduct" which is alleged reaches the standard for gross negligence. (ECF No. 36 at 16-17.); *Barbre v. Pope*, 935 A.2d 699, 717, 402 Md. 157, 187 (Md. 2007).

Under Maryland law, gross negligence entails "an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and [it] also implies a thoughtless disregard of the consequences without an exertion of any effort to avoid them." *Brooks v. Jenkins*, 220 Md. App. 444, 459, 104 A.3d 899 (Md. Ct. Spec. App. 2014) (quoting *Barbre*, 935 A.2d at 717); *See also Marriott Co. v. Potomac Telephone Co. of Maryland*, 124 Md. App. 463, 478, 723 A.2d 454, 462 (1998); *See also Great Northern Ins. Co. v. Recall Total Information Management, Inc.*, 2014 WL 3845891 at *4-5 (D. Md. Aug. 1, 2014) (finding that the plaintiff's allegations that the defendant failed to properly address a hazardous condition which posed a "substantial risk" to life and property met the pleading standard for gross negligence). Gross negligence is "something *more* than simply negligence and likely more akin to reckless conduct." *Barbre*, 935 A.2d at 717.

In this case, State Auto alleges that DPL informed the Fire Department that it would respond promptly to the "Priority One" emergency, even though DPL was fully aware that it could not do so. (ECF No. 19 at ¶ 21.) Additionally, State Auto alleges that DPL did not assign an available technician to the restaurant's fire. (*Id.* ¶ 22.) Because a technician did not arrive until an hour after the Fire Department placed its initial call, the fire was able to spread unrestrained and cause further damage to the restaurant. (*Id.* ¶¶ 19, 23.) Accepting these facts as true, Plaintiff states a plausible claim that DPL intentionally disregarded its manifest duty to exercise reasonable care in response to a hazardous fire which endangered

the public and damaged property.[5] Accordingly, DPL's Motion to Dismiss the gross negligence claim must be DENIED.

**II. DPL's Motion to Dismiss CAP's Crossclaim (ECF No. 42)**

**A. Indemnity**

CAP has filed a Crossclaim against DPL for indemnification and contribution in the event CAP should be liable to State Auto. (ECF No. 38.) In its Crossclaim, CAP alleges that because CAP was only passively negligent and Cross-Defendant DPL was grossly negligent in carrying out its duties to the Plaintiff, CAP is entitled to indemnity from DPL. (*Id.* at 1-3.) DPL moves to dismiss the Crossclaim. (ECF No. 42.) In support of its Motion, DPL argues that because CAP was actively negligent and there was no pre-existing relationship between CAP and DPL, Cross-Plaintiff CAP's Crossclaim for indemnity should be dismissed. (*Id.* at 5-6.)

Indemnification involves the shifting of the entire loss from one party onto the other. *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1103 (4th Cir. 1989). The right to indemnity is an obligation enforced between the wrongdoers. *See Pyramid Condominium Ass'n v. Morgan,* 606 F. Supp. 592, 598 (D. Md. 1985). There must be a prior existing legal relationship between the wrongdoers prior to the tort in order to justify the indemnity claim. *See Franklin v. Morrison*, 350 Md. 144, 162, 711 A.2d 177, 188 (1998); *Council of Co-Owners Atlantis Condominium, Inc.* v. *Whiting-Turner Contracting Co.,* 517 A.2d 336, 308 Md. 18 (1986).

---

[5] In another case involving alleged gross negligence, this Court found that Plaintiff stated a plausible claim for gross negligence based on the defendant's failure to institute safeguards which it had promised. *See Pasternak & Fidis, P.C. v. Recall Total Information Management, Inc.***,** 95 F.Supp.3d 886 (D. Md. 2015).The facts in this case are even more compelling, as DPL's alleged failure is one of failing to make an effort to exercise reasonable care in addressing a hazardous condition to the public, first responders, and property.

11

Cross-Plaintiff CAP alleges no prior existing relationship between itself and DPL. On this basis alone, CAP cannot obtain indemnification and the corresponding claim against DPL is DISMISSED.[6]

**B. Contribution**

CAP also alleges that it is entitled to contribution based on DPL's negligence and gross negligence. (ECF No. 38 at 3.) DPL argues that CAP has failed to plead a plausible claim against DPL. (ECF No. 42 at 2.)

The Maryland Uniform Contribution Among Joint Tort–Feasors Act (UCATA), Md. Code Ann. § 3–1401, states that "[t]he right of contribution exists among joint tort-feasors." Md. Code Ann. § 3–1402(a). In order for there to be a cause of action against a third-party defendant, the defendant must be directly liable to the plaintiff. *Kelly v. Fullwood Foods, Inc.,* 111 F.Supp.2d 712, 715 (D. Md. 2000) (citing *Montgomery Cnty. v. Valk Mfg. Co.,* 562 A.2d 1246, 1249, 317 Md. 185, 192 (Md. 1989)). Furthermore, the right to contribution can be established when independent tortfeasors contribute to the same injury. *Parler & Wobber v. Miles & Stockbridge.* 756 A.2d 526, 535, 359 Md. 671, 687 (2000) ("[c]ontribution rests on common liability, not on joint negligence or joint tort. Common liability exists when two or more actors are liable to an injured party for the same damages, even though their liability may rest on different grounds.").

---

[6] Under Maryland law, indemnity is determined by the active/passive negligence rule; therefore, a defendant whose negligence was passive may seek indemnification from a tortfeasor's whose negligence was active. *See Franklin v. Morrison*, 350 Md. 144, 711 A.2d 177 (1998); *Pyramid,* 606 F. Supp. at 599. It is well established under Maryland law that if a tortfeasor is active, then that tortfeasor cannot obtain indemnification. *Franklin*, 350 Md. at 163. To determine whether a tortfeasor is actively or passively negligent, courts refer to the plaintiff's Complaint. *Pyramid*, 606 F.Supp. at 596. In light of there being no pre-existing relationship between DPL and CAP, this Court need not determine whether CAP was actively or passively negligent.

In this case, CAP is alleged to be responsible for starting the fire, while DPL is alleged to have been negligent and grossly negligent in responding to the fire, further exacerbating the injury ultimately suffered by Plaintiff. Therefore, DPL and CAP could both be liable to the Plaintiff for contributing to their respective damage. As such, the predicate for contribution is present. As discussed above, DPL's Tariff does not apply to State Auto's claims in this case and, therefore, DPL is subject to suit for the negligence claims alleged. The Crossclaim has sufficiently incorporated the Plaintiff's arguments and as a result, places DPL on notice that the claim is plausible. As State Auto's negligence count survives DPL's Motion and as CAP has sufficiently stated a claim for contribution, DPL's Motion for Dismissal of CAP's Crossclaim must be DENIED in part. Accordingly, DPL's Motion to Dismiss CAP's Crossclaim is GRANTED IN PART and DENIED IN PART.

## **CONCLUSION**

For the reasons stated above, DPL's Motion to Dismiss State Auto's Amended Complaint (ECF No. 25) is DENIED. DPL's Motion to Dismiss CAP's Crossclaim (ECF No. 42) is GRANTED IN PART and DENIED IN PART. Specifically, it is GRANTED as to CAP's indemnity claim, which is dismissed, and it is DENIED as to CAP's contribution claim, which remains pending.

A separate Order follows.

Dated:   July 20, 2017

                                                            _____/s/_____
                                                            Richard D. Bennett
                                                            United States District Judge